

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
09/24/2014

| | | |
|---|---|---|
| IN RE: § | | |
| FRANCIS M. DELAPE § | CASE NO: 13-34114 | |
| Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| MANNY BELLO § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 14-03165 | |
| § | | |
| FRANCIS M. DELAPE, *et al* § | | |
| Defendant(s) § | | |

## MEMORANDUM OPINION

The Court has "related to" jurisdiction under 28 U.S.C. § 1334 over Bello's claims against Benchmark Equity Group. Resolution of the claims against Benchmark could affect the bankruptcy estate.

### Background

On May 2, 2014, Manny Bello ("Bello") filed a complaint against Francis M. DeLape ("DeLape") and Benchmark. DeLape filed an individual chapter 11 petition on July 7, 2013.[1] The substance of the dispute centers on a $765,000 loan from Bello to Benchmark, allegedly induced by DeLape's misrepresentations.

Bello alleges that in April of 2012, DeLape made a series of telephone calls asking Bello for a loan to serve as the "final piece" of an exciting business opportunity involving international bonds. (ECF No. 1 at 1). According to Bello, DeLape represented that he had already invested millions of his own money in the project through Benchmark, a Delaware corporation owned by

---

[1] The case was converted to chapter 7 on February 5, 2014.

DeLape. Delape personally guaranteed the loan. (ECF No. 1-3 at 9).[2] Bello alleges that DeLape claimed he could back the personal guarantee through his real estate holdings in Panama, totaling more than $50 million.

Bello made the loan to Benchmark on May 21, 2012, and received a promissory note signed by DeLape as Chairman and CEO of Benchmark promising payment after 90 days. (ECF No. 1-3 at 2). Bello claims that neither Benchmark nor DeLape made any payments on the note. After a series of failed promises from DeLape to make payments, Bello filed this complaint. Bello's complaint alleges that DeLape, both individually and in his representative capacity as Chairman and CEO of Benchmark, fraudulently induced Bello into making the loan. (ECF No. 1 at 6-7). The complaint further alleges that Benchmark is the mere alter ego of DeLape and that DeLape should be held individually liable for Benchmark's actions.

On June 26, 2014, the Court held a scheduling conference. At the conference, the Court requested Bello to file a brief on whether the Court has subject matter jurisdiction over his claims against Benchmark, a non-debtor corporation. On July 25, 2014, Bello filed his brief. (ECF No. 15). Neither DeLape nor Benchmark has filed a response brief.

## "Related to" Jurisdiction

*Standard*

Congress conferred authority to bankruptcy judges through two sections of title 28 of the United States Code: § 1334 which grants district courts subject matter jurisdiction over cases related to title 11 and § 157 which allows district courts to refer cases under or related to title 11 to bankruptcy courts. *Mugica v. Helena Chem. Co. (In re Mugica)*, 362 B.R. 782, 787 (Bankr. S.D. Tex. 2007).

---

[2] The signature page of the note contains the following handwritten addendum: "I, Frank DeLape as an individual personally guarantee, the principal and interest, of the note." (ECF No. 1-3 at 9).

Under § 1334(a), district courts have original and exclusive jurisdiction in cases brought under title 11. 28 U.S.C. § 1334(a). District courts also have original jurisdiction over "all civil proceedings . . . related to cases under title 11." 28 U.S.C. § 1334(b). The burden of demonstrating whether the Court has "related to" jurisdiction over a proceeding rests with the party asserting jurisdiction. *See Kokken v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The Fifth Circuit has held that "[p]roceedings are 'related to' bankruptcy cases if their outcome could conceivably have any effect" on the bankruptcy estate. *Fire Eagle, LLC v. Bischoff (In re Spillman Dev. Grp., Ltd.)*, 710 F.3d 299, 304 (5th Cir. 2013) (internal quotation marks omitted). A conceivable effect is defined as "any that *could* alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which *in any way* impacts upon the handling and administration of the bankrupt estate." *Id.* (emphasis in original). A possibility that a suit may ultimately have no effect on the estate is not enough to conclude that no conceivable effect exists. *Id.* "Certainty, or even likelihood of such an effect is not a requirement." *Arnold v. Garlock*, 278 F.3d 426, 434 (5th Cir. 2001).

Jurisdiction under § 1334(b) is broad. By choosing to depart from the limited jurisdiction conferred under the Bankruptcy Act, Congress intended to grant comprehensive jurisdiction to bankruptcy courts to promote the efficient disposition of all matters connected with the bankruptcy estate. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-308 (1995). On multiple occasions, the Fifth Circuit has upheld a bankruptcy court's jurisdiction over non-debtor defendants. In *In re Wood*, the Fifth Circuit found that jurisdiction under §1334 existed over all claims when the plaintiff alleged liability resulting from the joint conduct of the debtor and non-debtor defendants. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 94 (5th Cir. 1987); *see also Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292,

298 (5th Cir. 2007) (holding that the court had jurisdiction over a dispute between two non-debtor parties when, depending on the outcome, either the defendant or the debtor owed money to the plaintiff).

The Fifth Circuit has also held that jurisdiction exists over a suit between two creditors where one party sought declaratory judgment releasing them from certain guaranty obligations. *Fire Eagle, LLC v. Bischoff (In re Spillman Dev. Grp., Ltd.)*, 710 F.3d 299, 304-305 (5th Cir. 2013). In *Spillman*, the Court reasoned that if the defendant succeeded on the merits of the suit and was allowed to recover against the guarantees, any deficiency claim against the bankruptcy estate would be diminished. *Id.* at 305. Despite acknowledging that the third-party litigation had only attenuated and hypothetical effects on the bankruptcy estate, the Fifth Circuit nevertheless held that such effects were sufficient to give rise to "related to" jurisdiction. *See id.* Similarly, in *In re Stonebridge Technologies* "related to" jurisdiction existed over claims brought by a non-debtor against a non-debtor where the outcome could affect "the need [for a third party] to seek reimbursement from [the] bankruptcy estate." *EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260, 266-67 (5th Cir. 2005).

Once the court has determined that the suit is "related to" a proceeding under title 11, jurisdiction vests with the district court. *Mugica v. Helena Chem. Co. (In re Mugica)*, 362 B.R. 782, 788 (Bankr. S.D. Tex. 2007). Each district court may provide that proceedings related to cases under title 11 will be referred to the bankruptcy judges. 28 U.S.C. § 157(b).

*Analysis*

It is apparent that Bello's claims against Benchmark could have a conceivable effect on the bankruptcy estate. Bello claims that he was defrauded through the joint conduct of DeLape, the debtor, and Benchmark, the non-debtor. This is the same scenario that confronted the Fifth

Circuit in *In re Wood*. In that case, the plaintiff sued the debtor as well as the debtor's business partners over a wrongful stock issuance in violation of a partnership agreement. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 91 (5th Cir. 1987). The court held that "when the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334." *Id.* at 94.

*In re Wood* is controlling here. Just as in *In re Wood*, "[s]uccess against any of the defendants will have a potential effect on the estate." *Id.* If Benchmark is found liable, but DeLape is not, the estate will not directly bear the burden of the judgment.[3] On the other hand, if Benchmark and DeLape are found jointly liable, then DeLape might be entitled to seek contribution from Benchmark and the estate's burden might be lessened. Finally, if DeLape is found liable but Benchmark is not, then the estate would be responsible for the entire judgment.

Bello argues that jurisdiction exists because in his original complaint Bello contends that Benchmark is merely the alter ego of DeLape. When defendants are sued under an alter ego theory, it "only strengthens the degree to which [the] cases are interrelated." *Jenrob Investments, LP v. Hidalgo Logistics, LLC (In re Hidalgo Logistics, LLC)*, Case No. 13-70239, 2014 WL 2003216 at *9 (Bankr. S.D. Tex. May 15, 2014). If Bello is successful in piercing the corporate veil, DeLape would be individually liable for any judgment against Benchmark. Accordingly, a judgment against Benchmark would have a direct effect on the bankruptcy estate.

Bello also argues that because DeLape is the sole owner of Benchmark, any recovery against Benchmark would reduce Benchmark's value, and by extension, the value of the bankruptcy estate. Because a conceivable effect on the bankruptcy estate has already been established, that argument need not be addressed.

---

[3] Delape listed the loan to Bello as an unsecured debt for $765,000 on his schedules. (Case No. 13-34114, ECF No. 19 at 37). His total unsecured debts amount to $3,183,723.58. *Id.*

**Conclusion**

The Court has "related to" jurisdiction over Bello's claims against Benchmark. The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **September 24, 2014.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE